UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 20-034-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| GHY ASUDDIN SYED, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant Ghy Asuddin Syed has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Record No. 102] Syed has bladder cancer and is currently incarcerated at FCI Butner Low ("FCI Butner").[1] His projected release date is June 7, 2022. [Record No. 105-1] Syed was sentenced just one year ago in April 2021, and self-reported to the custody of the Bureau of Prisons ("BOP") in July 2021. All told, few material facts have changed since those dates.

Contrary to Syed's accusations, the BOP has not postponed placing the defendant on home confinement in retaliation for his 28 U.S.C. § 2241 petition filed in the United States District Court for the Eastern District of North Carolina (or any of his other numerous attempts to obtain release from prison). Additionally, the BOP has treated, or more accurately, attempted to treat, the defendant's bladder cancer (and other health problems). And while COVID-19 cannot serve as a basis for relief, the BOP has also effectively managed the virus

---

[1] *See Find an Inmate*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 30, 2022).

in Syed's case (and at FCI Butner). For these reasons and the others discussed below, Syed's motion will be denied.

## I. Background

Syed, a pain management doctor from Houston, Texas, received kickbacks from a co-conspirator in exchange for urine drug test referrals billed to Medicare, Medicaid, and other commercial health care programs. [*See* Record No. 57, pp. 2-3.] He pleaded guilty on December 1, 2020, to one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371. [Record No. 56]

Syed was diagnosed with bladder cancer in 2019 and underwent regular treatment at MD Anderson Cancer Center ("MD Anderson") in Houston prior to sentencing. [Record No. 76, ¶ 61] Additionally, his Presentence Investigation Report ("PSR") reflects a high blood pressure diagnosis. [*Id.*]

The Court accounted for these health issues and the risks posed by COVID-19 when formulating the defendant's sentence during his sentencing hearing on April 5, 2021, stating:

> I've considered the defendant's health, and I've also considered, in relation to that, the arguments that have been made with COVID. Thankfully, either in institutions, penal institutions and otherwise, COVID numbers are declining, and there's less risk that is presented.
>
> But notwithstanding that fact, I'm also going to allow the defendant a period of time to self-report, which will allow those numbers to further decline. But as I indicated earlier, I am going to impose a term of incarceration in this particular matter. I believe it is necessary to meet the factors of [18 U.S.C. §] 3553 that I have mentioned. And, quite frankly, I think that to impose something that would not include a term of incarceration would unduly diminish the seriousness of this particular offense.

[Record No. 96, pp. 152:15-153:3] The Court accordingly sentenced Syed to a term of fifteen months' imprisonment, three years of supervised release, and $325,739.00 in restitution. [Record No. 71, pp. 2-3]

Syed was given a July 19, 2021, self-report date. [*Id.*] His last cancer treatment prior to that date occurred on June 29, 2021. [*E.g.*, Record No. 106, p. 29.] During this appointment, he received Bacillus Calmette-Guerin ("BCG") immunotherapy,[2] the treatment recommended by his cancer physician at MD Anderson. [*See id.* at pp. 29, 254.]

Shortly after he self-reported to BOP custody, the defendant began to make administrative requests for a reduction in sentence. He has produced several records relating to these requests, including: (1) an August 27, 2021, BOP denial of a compassionate release request submitted on an unspecified date; (2) a November 12, 2021, BOP denial of a compassionate release appeal received on October 27, 2021; (3) and a March 1, 2022, BOP denial of a January 18, 2022, compassionate release request. [Record No. 102-1, pp. 13, 55, 63-64] Syed also sought similar relief through other methods, including a 28 U.S.C. § 2241 petition for a writ of habeas corpus and an e-mail to a United States Senator. [*See* Record No. 102-1, p. 53; *Syed v. Warden T. Scarantino*, No. 5:21-hc-02250-M (E.D.N.C. Dec. 20, 2021).]

While these efforts were not successful, BOP personnel approved the defendant for direct home confinement on December 9, 2021, recommending that the defendant be released to live with his wife and daughter in Houston. [Record No. 105-4, pp. 1-2] The parties agree

---

[2] BCG immunotherapy involves the use of a catheter to deliver a liquid solution containing the bacterium *Mycobacterium bovis* into the bladder. *See Bacillus Calmette-Guerin (BCG) Treatment*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/17908-bacillus-calmette-guerin-bcg-treatment (last visited Mar. 29, 2022).

that Syed's home confinement was subsequently scheduled to begin on February 23, 2022. [Record Nos. 102-1, p. 2 and 105, p. 6]

In the meantime, a BOP urologist determined that continued BCG immunotherapy would be appropriate beginning in January 2022. [*See*, *e.g.*, Record No. 106, p. 217.] But when the time arrived for such treatment, Syed largely refused to proceed as planned.[3] Medical records produced by the United States indicate that the defendant expressly rejected treatment on December 28, 2021, January 28, 2022, February 4, 2022,[4] and February 18, 2022. [Record No. 106, pp. 3-4, 186, 189, 204]

Several of these refusals concerned alleged medical problems that BOP personnel did not consider sufficient to postpone BCG immunotherapy. For example, the January 28, 2022, refusal was grounded in Syed's complaints of a skin infection following swelling in his lower extremities, which medical personnel had treated a week earlier. [*Id.* at pp. 4, 189.] The examining physician found no evidence of an infection in the areas at issue. [*Id.* at p. 4.] Similarly, the February 18, 2022, refusal appears to have been premised on Syed's unspecified claim that he was sick, which a BOP doctor determined to be unfounded. [*Id.* at p. 3.]

---

[3] On one occasion (January 7, 2022), Syed did not expressly refuse treatment. Instead, BOP doctors were unable to perform BCG immunotherapy due to Syed's report that he had blood in his urine a month prior, which required a urine analysis and culture "to make sure that there [we]re no signs of infection as this would increase his risk of sepsis if he [was] given BCG . . . ." [Record No. 106, p. 196] Another time (January 21, 2022), Syed agreed to have the BCG immunotherapy scheduled for January 28, 2022. [*See* Record No. 106, p. 10.] As described above, however, he subsequently refused treatment on January 28, 2022.

[4] The Court has not located evidence concerning the reasons Syed refused cancer treatment on February 4, 2022. That said, it is notable that he also refused follow-up treatment for lower extremity swelling on February 3, 2022. [Record No. 106, p. 187]

On at least one other occasion, however, the defendant advised BOP medical personnel that he did not want treatment because he would rather receive it from MD Anderson upon his release from physical incarceration. The defendant wrote the following on December 28, 2021:[5]

> My treating physician assured me 6 months ago [that] he would follow MD Anderson['s] care plan + I never received any chemo/immunotherapy since I [have been] here. Please help me in continuing care at MD Anderson Cancer Center . . . .
>
> [I] already delayed my chemo for months. I am not *denying* care, I had nightmare[s] + *bad exposure* in [my] last procedure. I will prefere [sic] to have [a] second opinion and continued care at MD Anderson Cancer Center.

[*Id.* at p. 204. (emphasis in original).]

Records prepared by BOP medical personnel echo this sentiment, indicating that the defendant expressed a desire to forgo BCG immunotherapy until he is released from physical incarceration. [*Id.* at pp. 10, 16.] While incarcerated, Syed also maintained and/or rescheduled multiple cancer treatment appointments for November and December 2021, as well as February 2022, at MD Anderson. [Record No. 102-1, pp. 2, 53, 57-58, 62]

The BOP's Health Services placed Syed on a medical hold on February 23, 2022, citing his refusal to receive cancer treatment. [Record No. 105-5] This medical hold appears to have precluded release to home confinement, inasmuch as it instructs BOP personnel not to transfer the defendant. [*Id.*]

---

[5] The December 28, 2021, episode appears to have been a preemptive refusal because Syed advised medical personnel that he would not undergo the BCG treatment the BOP had scheduled in January 2022. [*See, e.g.*, Record No. 106, p. 10.]

The United States indicates that BOP medical professionals may have misapprehended the nature of Syed's forthcoming home confinement by believing that "he would be going to a halfway house – where necessary cancer treatments are not available – instead of his home residence – where he could presumably resume treatment through his normal medical specialists." [Record No. 105, pp. 7-8] This could explain the medical hold because: (1) Syed will still be in BOP custody when placed on home confinement; and (2) BOP medical personnel have an ostensible interest in ensuring that defendants in BOP custody receive essential medical treatment. [*Id.* at p. 7.] The government's theory finds support in a February 18, 2022, administrative note from a BOP doctor, which states: "[Syed] was informed of the consequences of his decision [to refuse BCG immunotherapy] including progression of his urinary bladder cancer and getting a hold on his scheduled transfer to a halfway house since he needs to be treated by the urologist at FMC for his urinary bladder cancer - an opportunity he will not get at the halfway house." [Record No. 106, p. 3]

Syed's pending motion contends that several extraordinary and compelling reasons warrant relief, including: "(1) [the] COVID-19 pandemic, (2) his unique risks based on underlying health conditions, (3) the denial of medical care at Butner, [and] (4) the [BOP's] retaliatory conduct to deny him home confinement based on the filing of a[n] Eighth Amendment violation claim for deliberate indifference to [his] medical needs."[6] [Record No. 102, p. 1] Syed claims that he is immunocompromised and that the following medical conditions (in addition to bladder cancer and high blood pressure) put him at a greater risk of

---

[6] This argument refers to the December 2021 § 2241 petition filed in the Eastern District of North Carolina.

contracting a serious case of COVID-19: diabetes mellitus, hyperlipidemia, morbid obesity, diffuse idiopathic skeletal hyperostosis (DISH) syndrome, diabetic peripheral neuropathy, cataracts, and degenerative disc disease.[7]  [*Id.*]  He also challenges the BOP's general management of COVID-19.  [*Id.*]

Additionally, Syed asserts that he has not received adequate cancer treatment while in BOP custody.  [Record Nos. 102 and 102-1, pp. 1-2]  He requests that the Court reduce his term of imprisonment to time served or, alternatively, time served with an extended period of supervised release.[8]  [Record No. 102, pp. 1-2]

## II. Legal Standard

When considering a § 3582(c)(1)(A)(i) sentence reduction, district courts engage in the following three-step inquiry: (1) "the court must find that extraordinary and compelling reasons warrant a sentence reduction"; (2) the court must "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."  *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (cleaned up) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)).  "Congress provided no statutory definition of

---

[7]  Several of these conditions are documented in the medical records produced by the United States, including: Type 2 diabetes mellitus, hyperlipidemia, obesity, and hypertension.  [*See*, *e.g.*, Record No. 106, pp. 4, 23.]

[8]  The Court is also in receipt of a March 16, 2022 "Rebuttle [*sic*] to Response of Bureau of Prison[s] 03/10/22," which includes a document addressing various points raised by the BOP in response to an administrative request, as well as a copy of the first page of the Court's March 18, 2022, Order in this matter.  This correspondence does not include the original administrative request, the BOP's response, or any documentation supporting Syed's arguments.  It will be filed in the record, but it does not substantively affect this analysis.

'extraordinary and compelling reasons,' instead delegating that task to the [United States] Sentencing Commission." *Id.* (citing 28 U.S.C. § 994(t)).

The Sentencing Commission subsequently issued U.S.S.G. § 1B1.13, a policy statement with Application Notes that prescribe categories of "extraordinary and compelling reasons" for a sentence reduction. *See id.*; U.S.S.G. § 1B1.13 n. 1. But this is "not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Elias*, 984 F.3d at 519.

Accordingly, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* at 519-20 (citations omitted). "But the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (emphasis in original) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Instead, courts look to the "ordinary meaning [of the terms] at the time Congress enacted the statute." *Id.* Using this method, "extraordinary" for the purposes of the statute means "most unusual," "far from common," and "having little or no precedent." *Id.* (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). And "compelling" means "forcing, impelling, driving." *Id.* (quoting Webster's Third New International Dictionary: Unabridged at 463).

Additionally, a court may "permissively consider" the § 1B1.13 policy statement "as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n. 1 (6th Cir. 2021). Thus, the policy statement, while not binding, may be instructive when a defendant alleges

extraordinary and compelling reasons that relate to its provisions.  *See*, *e.g.*, *United States v. Gibson*, No. 5: 14-074-DCR, 2021 WL 4768244, at *2 (E.D. Ky. Oct. 12, 2021).

### III. Alleged Extraordinary and Compelling Reasons for Relief

#### A. Home Confinement

The Court first addresses the defendant's home confinement argument.  Syed's filings are full of unsupported conspiratorial allegations against the BOP, including an assertion that medical personnel have denied him home confinement in retaliation for the § 2241 petition he filed in December 2021.  These allegations are unfounded and do not constitute extraordinary and compelling reasons for relief.

Instead, the record indicates the medical hold was instituted for medical reasons, *i.e.*, Syed's consistent refusal to undergo BCG immunotherapy when it was scheduled in January and February 2022.  However, BOP medical personnel may have also mistakenly believed that the defendant would be transferred to a halfway house, rather than his home where he could proceed with cancer treatment.  Counsel for the government represents that he has asked the BOP to consider whether the medical hold is premised on this mistaken belief [Record No. 105, pp. 7-8], and this appears to be an appropriate course of action.

Further, the Court will direct the United States to provide the BOP with a copy of this Memorandum Opinion and Order so that any remaining misunderstanding about Syed's approval for direct home confinement may be clarified.  But the decision to grant home confinement rests with the Attorney General and the BOP, not the Court.  *See*, *e.g.*, *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (citing 18 U.S.C. § 3624(c)(2); Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020)).  The BOP is legally entitled to make such a decision,

and it is in the best position to make administrative placement determinations for Syed. Thus, insofar as the parties request that the Court take any further action regarding home confinement placement, it declines to do so.

### B. Medical Condition and Care

As for the arguments concerning his medical condition and care, Syed has not presented extraordinary and compelling reasons for a sentence reduction. Most of his arguments are focused on his bladder cancer and the alleged lack of care provided by BOP medical personnel. However, "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Hunter*, 12 F.4th at 570. The defendant's cancer diagnosis was well-documented at time of sentencing, and the Court explicitly accounted for it when it formulated the sentence imposed. Thus, relief is not warranted.

Moreover, the BOP has *repeatedly* attempted to treat Syed's cancer. On one occasion (January 7, 2022), a urologist could not do so in light of Syed's recent complaints of blood in his urine. This was ostensibly reasonable, given the concerns about sepsis and the fact that BCG immunotherapy requires the use of a catheter. On other occasions, the defendant refused treatment even though medical personnel did not find any material impediments to proceeding as planned.

Further, the defendant's filings have made it abundantly clear that he feels entitled to continued care at MD Anderson, rather than a BOP facility. Syed began to request release from prison soon after he arrived and has maintained appointments there throughout his incarceration as he has sought to obtain release from prison through various means. He has even gone so far as to advise BOP medical personnel in December 2021 that he would forgo

BCG immunotherapy while waiting for home confinement scheduled to begin *two months later* so that he could be treated at MD Anderson.

Again, the Court was aware of Syed's treatment at MD Anderson, and its availability cannot serve as a basis for relief. *See Hunter*, 12 F.4th at 570. Notwithstanding this point, his preference for treatment at MD Anderson is hardly "compelling" as that term is used in § 3582(c)(1)(A)(i). For one, the BOP is able and willing to provide the cancer treatment recommended by his physician at MD Anderson. Further, many defendants (not to mention law abiding individuals) suffering from cancer would doubtless prefer to be treated at MD Anderson, which is regarded as one of the best cancer treatment facilities in the United States and a top hospital for urology. *See, e.g., MD Anderson again ranks No. 1 in cancer by U.S. News & World Report*, MD ANDERSON CANCER CENTER, https://www.mdanderson.org/news room/md-anderson-again-ranks-number-one-in-cancer-by-u-s-news-and-world-report.h00-159462423.html (last visited Mar. 30, 2022).

Along similar lines, Syed is entitled to "adequate medical care" as a prisoner, "not the best care possible." *Rhinehart v. Scutt*, 894 F.3d 721, 750 (6th Cir. 2018) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)). To the extent he is dissatisfied with the BOP's treatment efforts, his complaints are not "extraordinary" or "compelling."

As the United States aptly asserts, Syed "cannot credibly refuse necessary medical care, and then point to the untreated condition as a basis for compassionate release." [Record No. 105, p. 5] Accordingly, his cancer-specific arguments fail to present extraordinary and compelling reasons for relief.

The Court also notes that to the extent the defendant raises his other medical problems as grounds for relief independent of COVID-19, they do not constitute extraordinary and

- 11 -

compelling grounds for relief. The BOP appears to be adequately treating the documented conditions through prescription medications. [Record No. 106, p. 23] And more generally, the defendant's condition does not appear to be consistent with the nonbinding "Medical Condition of the Defendant" criteria provided in § 1B1.13 n. 1 (even if one considers his cancer). *See* U.S.S.G. § 1B1.13 n. 1(A). For these reasons, Syed's medical condition and treatment while in BOP custody do not constitute extraordinary and compelling reasons for a sentence reduction.

### C.  COVID-19

Turning to the COVID-19 arguments, the United States Court of Appeals for the Sixth Circuit has held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). To be sure, Syed's medical problems likely leave him immunocompromised. *See COVID-19 Vaccines for Moderately or Severely Immunocompromised People*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html (last visited Mar. 30, 2022) (noting that "[p]eople are considered to be moderately or severely immunocompromised if they have . . . been receiving active cancer treatment for tumors or cancers of the blood . . . ."). But it is not clear why his condition would preclude the application of *Lemons*.

The CDC recommends that immunocompromised individuals receive vaccines and vaccine boosters. *See id.* And Syed received two vaccine doses prior to reporting to BOP custody and later received a vaccine booster while in prison. [Record No. 106, p. 114] Thus,

*Lemons* generally appears applicable. Moreover, the Sixth Circuit has applied *Lemons* in subsequent cases involving immunocompromised defendants. *See United States v. Justice*, No. 21-5841, 2022 WL 672277, at *1-2 (6th Cir. Feb. 28, 2022); *United States v. Traylor*, 16 F.4th 485, 486-87 (6th Cir. 2021). These cases are analogous to Syed's circumstances and demonstrate that *Lemons* applies.

Additionally, Syed's points regarding BOP management of COVID-19 are unavailing. *Lemons* contemplated the "unique [COVID-19] challenges" prisoners face, including social distancing issues, but nonetheless found that "the vaccine now significantly reduces the risks associated with COVID-19." *Lemons*, 15 F.4th at 751. As the Sixth Circuit noted, "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.* (quoting *Broadfield*, 5 F.4th at 803).

Further, FCI Butner currently reports *zero* active COVID-19 cases among inmates and staff. *See COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Mar. 30, 2022). And Syed himself has consistently tested negative for COVID-19 while in BOP custody. [Record No. 106, p. 113] He disputes the accuracy of FCI Butner's COVID-19 data, claiming that he has actually contracted COVID-19 while in prison. [*See, e.g.*, Record No. 102, pp. 1-2.] But he has not produced any evidence to support these arguments. Thus, all of the defendant's COVID-19 arguments fail.

### IV. Section 3553(a) Factors

Finally, even if Syed had presented extraordinary and compelling reasons for relief, the § 3553(a) factors counsel against a sentence reduction. The Court previously considered the § 3553(a) factors less than a year ago during Syed's sentencing hearing. In doing so, the undersigned observed that Syed lacked a criminal history and exhibited numerous positive

characteristics, including a strong work ethic (demonstrated, *inter alia*, through his rise from poverty in Pakistan and professional medical practice in America), history of community service, and considerable family support. [Record No. 96, pp. 151:5-25, 153:10-22] The Court also concluded that the defendant does not have a significant likelihood of committing a similar offense in the future and noted the fact that his age (64 at the time of sentencing, 65 today) decreased his chance of recidivism. [*Id.* at p. 152:1-14.] And as described above, the Court explicitly accounted for the defendant's medical condition and COVID-19. [*Id.* at pp. 148:22-149:5, 152:15-22.]

Additionally, the Court addressed the need to prevent unwarranted sentencing disparities and the relative culpability of the defendant and his coconspirators. [*Id.* at pp. 143:3-146:20, 149:8-9, 153:22-154:1.] And the Court discussed the issues of general and specific deterrence, the need to provide a just punishment, and the seriousness of the offense. [*Id.* at p. 148:4-19.]

After considering all relevant circumstances, the Court determined that a 15-month term of incarceration, a considerable downward variance from Syed's Guidelines range of 24 to 30 months' imprisonment, was appropriate. [*Id.* at p. 153:4-9, 154:2-11.] The Court specifically concluded that the Guidelines range indicated that a noncustodial sentence was not appropriate and emphasized that imposing such a sentence would unduly diminish the seriousness of the offense. [*Id.* at pp. 152:24-153:5.]

Little has changed since the Court announced Syed's sentence. For example, an Individualized Needs Plan produced by the defendant indicates that the BOP considers him to have a minimum risk of recidivism, a point consistent with the Court's findings at sentencing. [Record No. 102-1, p. 12] And as described above, the BOP has provided (or attempted to

provide) the defendant's needed medical care under his current arrangement. *See* 18 U.S.C. § 3553(a)(2)(D). The defendant's sentence remains just and appropriate. However, a sentence reduction would diminish the seriousness of the offense while failing to provide adequate general deterrence. All other considerations remain the same. Thus, the Court's prior § 3553(a) determination stands, and a sentence reduction is not appropriate.

## V. Conclusion

Syed's home confinement arguments do not constitute extraordinary and compelling reasons for relief, and the United States is capable of resolving any confusion regarding the circumstances of his forthcoming term of home confinement. Additionally, the defendant's medical condition, medical care, and COVID-19 arguments fail to present grounds for the relief soght. But even if these arguments had merit, compassionate release would not be warranted because the § 3553(a) factors weigh against a sentence reduction.

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Syed's motion for compassionate release [Record No. 102] is **DENIED**.

2. The Assistant United States Attorney assigned to this matter is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to the United States Bureau of Prisons.

3. The Clerk of the Court is **DIRECTED** to file the defendant's correspondence dated March 16, 2022, in the record of this proceeding.

Dated: March 30, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky